## SCOTT v. DAWSON et al.

No. 26272. June 9, 1936.

W. F. Schulte, for plaintiff in error.

C. F. Green, for defendants in error.

WELCH, J. This case had its inception as a probate proceeding in the county court of Pontotoc county, Okla. Ella Scott, nee Perry, a three-quarter blood Chickasaw Indian, who died December 31, 1929, and leaving issue born since March 4, 1906, had made a will dated November 16, 1929, wherein she undertook, among other things, to devise her homestead allotment. The will was admitted to probate upon the application of A. M. Scott and he was appointed executor thereof. At the time of submission of the final report the plaintiff in error, as an heir of said Ella Scott, nee Perry, and as executor of her last will and testament, challenged her right to make disposition in her will of her homestead allotment in this way. He further contended that, by reason of the homestead provision in the will being invalid, it would invalidate the entire will and make the estate descend according to the law of descent and distribution of the state of Oklahoma. From an adverse decision by the county court the executor appealed to the district court of Pontotoc county. There the question was again decided adversely to the executor, and he has appealed to this court, where he will be referred to as plaintiff, while the defendants in error will be referred to as defendants.

It is first insisted by the defendants that the appeal should be dismissed by reason of the fact that upon appeal from the county court to the district court the cause was tried without filing a certified transcript of the proceedings from the county court. In urging the motion to dismiss the defendants rely chiefly upon In re Assessment of Property of Kennedy, 167 Okla. 248, 29 P. (2d) 112; and In re Folsom's Estate, 57 Okla. 79, 159 P. 751, and O'Neill v. Cunningham, 159 Okla. 114, 14 P. (2d) 421, are also cited as sustaining their contention. Instead of a certified transcript of the court proceedings the original county court files and papers were used in the trial of the cause without objection. The motion to dismiss is overruled upon authority of Flynn v. Vanderslice, 172 Okla. 320, 44 P. (2d) 967, wherein this court commented at considerable length upon the law as applied to facts in all material respects similar to the facts here. It is to be observed from the Vanderslice Case, supra, that the practice of substituting or using the original records and files of the county court upon appeal to the district court in probate matters in lieu of certified copies of transcript should be discouraged; however, the practice is not fatal to the jurisdiction of the district court. The certified transcript should be required upon timely motion or objection made, and therein lies the material distinction between this case and the cases relied upon by defendants.

Passing to the question presented by this appeal upon the merits, it is contended by plaintiff that a portion of the land sought to be devised by the terms of the will was subject to federal restriction against alienation, and therefore could not be alienated by will. Ella Scott was a three-fourths blood Chickasaw Indian. She executed the will in November, 1929, and died in December, 1929. Therein she devised to her husband, the plaintiff here, all of her surplus allotment of land, and devised to her children, all born since March 4, 1906, all of her homestead allotment. It is well settled that homesteads of Indian allottees of the degree of blood possessed by Ella Scott are impressed with federal restrictions against alienation and such restrictions remain thereon upon the death of the allottee when such allottee has issue born since March 4, 1906. Such homestead allotment is reserved for the use and support of such issue during their life or lives or until April 26, 1931, and the same cannot be alienated unless restrictions are removed by the Secretary of the Interior. Grisso v. Milsey, 104 Okla. 173, 230 P. 883; Take v. Miller, 139 Okla. 115, 281 P. 576; Dierks v McDonald, 148 Okla. 215, 289 P. 297; Kimbro v. Harper, 113 Okla. 46, 238 P. 840.

An attempt to dispose of land by will is a species of alienation against which such federal restrictions are effective. Taylor v. Parker et al., 33 Okla. 199, 126 P. 573; Letts v. Letts, 73 Okla. 313, 176 P. 234.

Under the several acts of Congress as shown and discussed in Grisso v. Milsey, supra, the homestead in the hands of the allottee prior to her death was inalienable by reason of restrictions imposed by Congress, and such restrictions remained upon her death. We must conclude, therefore, that the will was ineffective to convey any part of the fee-simple title to said land as violative of the congressional restrictions placed thereon.

It is urged by the defendants in this connection that section 9 of the Act of Congress of May 27, 1908 (35 Stat. 312, chap. 199), in so far as it provides that the homestead shall remain inalienable for the use and

support of issue born subsequent to March 4, 1906, is intended only for the benefit of such issue. They assert that, inasmuch as the homestead here was devised exclusively to such issue, the purpose of such act has been fully served, in that such issue did in fact obtain the exclusive use and benefit of the land up to April 26, 1931.

No authorities are given to support the contention, and it is evident from all of the cases which have come to our attention, both state and federal, that these restrictions running with the land are an absolute bar to alienation, and questions concerning the propriety of the alienation have never been considered proper subjects of inquiry where a violation of the congressional inhibition is shown.

Having determined that the devise of the homestead is void, we must determine the further question as to whether or not such void provision in the will renders the entire will ineffectual. The instrument sought to dispose only of allotments of land belonging to the testatrix. It sought to give to the husband the surplus allotment, specifically describing the same therein, and it sought to give to the children the homestead allotment with specific description. Our conclusion thus far operates to vest in the husband an interest in the homestead under the law of descent and distribution, which was clearly not intended by the testatrix. The devises to the husband and children, respectively, were in approximately equal portions of land from a standpoint of acreage. There is nothing contained in the will to indicate that the testatrix desired the husband to have the entire surplus allotment, and in addition thereto an undivided interest in the homestead. The devises indicate a general testamentary plan or scheme of dividing the property in specie between her husband and her children. This general plan or purpose is largely destroyed by virtue of the legal failure of the clause devising the homestead. Then to permit the clause devising the entire surplus to the husband to stand clearly does not represent the will of the testatrix and would result in injustice. The several devises under the will are interdependent one upon the other, and are obviously not subject to be treated separately or independently.

We consider the applicable rule of law properly stated in 28 R. C. L. p. 358, sec. 360, as follows:

"The general rule is that invalid provisions in a will may be rejected and the valid provisions given effect, if the general scheme of disposition entertained by the testator is not thereby changed. Accordingly a will purporting to dispose of both real and personal estate may be established as a valid testamentary disposition of the personalty, although it may not have been so published as to constitute a legal disposition of the realty. * *. * On the other hand, bequests in a will, valid in themselves, must be rejected with the invalid ones, if the retention of them would defeat the testator's wishes as evidenced by the general scheme adopted, or if manifest injustice would result to the beneficiaries."

See, also, the case of Reid v. Voorhees, 216 Ill. 236, 74 N. E. 804, 3 Ann. Cas. 946, wherein the court said:

"Where provisions of a will are in fact independent and not for the carrying out of a common or general purpose, it is undoubtedly true that such as are contrary to law may be rejected without in any manner affecting valid provisions. The statement, however, that a valid provision will be sustained if no violence is done to the parts sustained by the rejection of the invalid provisions is too narrow a statement of the rule, and is in disregard of the cardinal principle that the testator's wishes, as evidenced by the general scheme adopted, are to be taken into consideration, so that justice must be done if it can be. The rule as stated by appellees would seldom ever permit a valid provision to be set aside because other provisions were held invalid. It would be difficult to frame a will so that the rejection of the invalid provisions could seriously affect or do violence to valid provisions which might be sustained. The correct solution can only be arrived at by taking into consideration the general scheme and intention of the testator, and the effect that defeating a part of the provisions may have upon the general scheme of the testator or the beneficiaries or objects of his bounty."

An apt statement of the rule of law in this regard is found in Sevier v. Woodson, 205 Mo. 202, 104 S. W. 1, wherein the court said:

"If we find invalid portions to be in the instrument, do these invalid portions, when taken out of the instrument, so change the instrument as not to give effect to the general scheme and purpose of the testator in the disposition of his property? These questions we take in their order. In so doing we must and do recognize that it is the duty of courts to construe and not to make wills; that wills may be valid in part and invalid in part; that in determining what was the real scheme of disposition in the mind of the testator, the valid and invalid portions must be alike considered, and this for the reason that the presumption must

be indulged that the testator in formulating his scheme of disposition thought all portions legal and valid; that if the elimination of the invalid portions, if any there be, so changes the general scheme and purpose of the testator as would make the remaining portions amount to a new and different will, then the whole devise must fail."

Applying the above rules of law to the facts stated here, it is our conclusion that the will here under consideration, which consisted only of two specific devises of land in approximately equal amounts, must fall in toto, for it is readily apparent that the will of the testatrix is defeated by the invalid devise, to the point that the entire testamentary scheme and intention is disarranged.

The defendants cite Logan et al. v. Schoolfield, 55 Okla. 582, 155 P. 592, to the effect that when a will contains several distinct provisions, one or more of which is lawful, and one at least is unlawful in whole or in part, the devise should be declared void as to the latter and valid as to the rest. We have no fault to find with the rule there announced, and the same is in no wise in conflict with our decision here. In the Schoolfield Case, supra, the will was held valid for the purpose of passing the title to the personal property, and was held invalid for the purpose of passing title to the real estate. There were no facts there to indicate in the slightest degree that the testatrix did not desire her personal property to go to the same persons to whom it did go and in the same proportionate amounts, even though the title to the real estate was not passed thereby. The testamentary plan and purpose as to the passing of title to the personal property was not disturbed in the Schoolfield Case, and therein lies the principal distinction.

It is further contended by the defendants that plaintiff, having presented the will for probate and having sold certain portions of the land to the defendants here, cannot upon hearing of final report and distribution of the estate dispute the validity of the will; that such presentation of the will for probate and the sale of certain portions of the surplus allotment operates to estop him from the attack made.

The case of Letts v. Letts, supra, is authority for our conclusion that the presentation of the will for probate can have no such effect as is contended by the defendants. To accept the contention that the sale or attempted sale of the surplus to the defendants herein by A. M. Scott operates to estop an executor from the performance of his duty to espouse the distribution of an estate in accordance with law, would be in a case such as this equvalent to a nullification of the applicable congressional acts imposing restrictions upon Indian lands. Such acts on his part could in no way be construed as estopping the children of Ella Scott, because they did not participate therein, nor could his acts operate to make valid a conveyance of land which is void by reason of a violation of restrictions against alienation imposed by Congress. Smith v. Williams et al., 78 Okla. 297, 190 P. 555.

The judgment is reversed and the cause remanded to the district court with directions to remand to the county court for distribution of the estate according to the laws of descent and distribution of the state as upon intestacy.

OSBORN, V. C. J., and RILEY, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS, BUSBY, and PHELPS, JJ., absent.