OSCN Found Document:In the Matter of S.W., Mason v. Hall

 

 
 In the Matter of S.W., Mason v. Hall
2025 OK CIV APP 37
Case Number: 123078
Decided: 11/14/2025
Mandate Issued: 12/11/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2025 OK CIV APP 37, __ P.3d __

 

In the Matter of the Adoption of: S.L.M.W.,
XAVIER MASON, Appellant,
vs.
KESEAN TREY HALL, Appellee.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE KIM CONYERS, TRIAL JUDGE

REVERSED

Michael S. "Mickey" Homsey, Valerie Homsey Salem, Terry R. McMillan, HOMSEY & ASSOCIATES, Oklahoma City, Oklahoma, For Appellant

Eugene K. Bertman, Samuel L. Talley, Kaitlin B. Magee, TTSB LAW, Norman, Oklahoma, For Appellee

B.J. Goree, Presiding Judge:

¶1 Appellant is the biological father of S.L.M.W. After a hearing, the trial court entered an order granting Petitioner's application to adjudicate the minor child eligible for adoption without Father's consent. The Supreme Court has clarified that the trial court must consider the child's best interests when determining whether a child may be adopted without consent. Matter of Adoption of L.B.L., 2023 OK 48529 P.3d 175Id. at ¶12. Further, the transcript suggests the hearing may have been conducted under an assumption that the child's best interests was an issue solely relevant in a subsequent hearing. The order must be reversed for further proceedings.

I.

Background

¶2 Mia Waddle (Mother) was in a relationship with Xavier Mason (Father). Mother was 19 and Father was 17 when S.L.M.W was born. During the pregnancy, Mother lived at home with her mother. Father testified he also lived in a section of Mother's room for eight months during the pregnancy. Mother disputed this, testifying that Father only spent the night occasionally and never lived at her house. After S.L.M.W. was born, in May of 2021, the parents' relationship with one another deteriorated and Father moved to a different city to attend college in the Fall of 2022. Mother began dating Petitioner in May, 2023, and they became engaged in November of 2023. At that time, Mother and S.L.M.W. moved in with Petitioner at his home.

¶3 Father filed a petition to establish paternity on January 2, 2025. On January 8, 2025, Mother and Petitioner got married, and Petitioner filed his petition for adoption on January 10, 2025. Petitioner alleged S.L.M.W. is eligible for adoption without her Father's Consent. After a hearing, the trial court found Petitioner met his burden of proof and granted the requested relief. Father appeals.

II.

Concurrent Jurisdiction of the Adoption Court

¶4 We first resolve a challenge to the trial court's jurisdiction. Two related proceedings are pending in Cleveland County District Court, a paternity case and this adoption. Father claims the district court lacked power to enter the appealed adoption order due to conflicting jurisdiction with the paternity case. He filed the paternity action in January 2025 and Petitioner filed for adoption eight days later. None of the orders in the paternity case are included in the record. However, it appears from the docket sheet that Honorable Judge Childers, the assigned judge in the paternity case, has made determinations concerning custody, visitation, and a guardian ad litem. A court minute suggests the paternity court is awaiting a ruling from the adoption court before ruling on a request to change visitation.

¶5 The two proceedings are seeking different relief and therefore they are not necessarily mutually exclusive. See, Matter of Adoption of S.A.H., 2022 OK 10503 P.3d 1190Steltzlen v. Fritz, 2006 OK 20134 P.3d 141et seq. The paternity court is expected to issue temporary orders when appropriate regarding child support, custody, and visitation. 10 O.S. §7700-624unless an adoption proceeding has been joined with the paternity proceeding. §7700-610(A).

¶6 Because the paternity court may not, without joinder, grant relief under the Oklahoma Adoption Code, there is no prohibition against a separate proceeding to adjudicate the child eligible for adoption without her biological father's consent. When a court cannot grant complete relief, a second court may exercise concurrent jurisdiction unless there is an intolerable conflict of jurisdiction. Matter of S.A.H., ¶20.

¶7 Here, the paternity court entered temporary orders for custody and visitation. Those orders were for the protection of the child and were not in conflict with the jurisdiction of the adoption court to decide whether Father's consent is necessary for an adoption. The judge presiding over the paternity case, instead of making additional custody determinations, is instead expressly awaiting the outcome of the appealed adoption order. We hold the record does not show intolerable conflict between the two actions and the appealed order was a valid exercise of jurisdiction.

III.

The Hearing on Eligibility to Adopt Without Consent

¶8 The parent-child relationship is a fundamental right, and an adoption cannot generally take place unless the child's parents consent to it. §7501-1.2(A)(2), Steltzlen v. Fritz, 2006 OK 20134 P.3d 14110 O.S. §7505-4.2

¶9 Father's primary defense is that he would have contributed to the support of his daughter but Mother prevented him from doing so. When a Father claims he has been denied the opportunity to exercise parental rights and duties toward the minor, he must prove to the satisfaction of the court that he made sufficient attempts to do so. 

¶10 If consent to adoption has not already been obtained, then the petitioner for adoption must file an application stating the reason the consent of the parent is not necessary. 10 O.S. §7505-4.1Matter of Adoption of M.A.S., 2018 OK 1419 P.3d 204

¶11 The district court has broad discretion in conducting hearings in an orderly process. State v. One Thousand Two Hundred Sixty-Seven Dollars, 2006 OK 15131 P.3d 116

¶12 For example, during opening statement, counsel for Petitioner offered: "At the conclusion of the evidence today, I'm asking this Court to find [Father's] consent is not necessary and allow this matter to proceed to a best interests' trial." Later in the proceeding, the trial court sustained a relevance objection and explained: "I think we are just at the adoption--without-consent stage. I'd - - that answer probably goes more towards best interests. I'll ask you to move on." And a moment later the judge clarified: "I think that goes more towards best interests, which we're not . . . not talking about today."

IV.

The Child's Best Interests Must be Considered
In a Hearing on Eligibility to Adopt Without Consent

¶13 The Supreme Court has clearly established that the best interests of the minor must be considered by the trial court in a hearing to determine whether the child is eligible for adoption without the parent's consent. Matter of Adoption of L.B.L., ¶14. In Matter of Adoption of M.A.S., 2018 OK 1419 P.3d 204In re Adoption of M.J.S., 2007 OK 44162 P.3d 21110 O.S. §7501-1.2L.B.L., ¶9. According to M.A.S., ¶31: "It is incumbent on the trial court to determine whether the adoption would be in the child's best interests prior to declaring the child eligible for adoption." M.A.S., at ¶31, citing In re Adoption of C.D.M., 2001 OK 10339 P.3d 802

¶14 In L.B.L., ¶1, the Supreme Court considered a parent's argument that she was denied an opportunity to form a relationship with her child. The court observed that the parent's due process rights must be compared with the child's best interests. We must conclude, therefore, that Father's defense under 10 O.S. §7505-4.2

V.

The Trial Court's Order Lacks Findings
As to the Best Interests of the Minor Child

¶15 In his appellate brief, Father proposes the appealed order should be vacated because it lacks findings of fact and conclusions of law and therefore fails to provide any meaningful judicial review. Petitioner counters that according to 12 O.S. §611

¶16 In M.A.S., the Supreme Court reviewed an order that declared the child eligible for adoption without consent. One problem was that the parties had agreed that the court's ruling could be based on their stipulations and briefs. The Supreme Court made it clear that an evidentiary hearing is required. And following that holding, the court said, "In proceedings of this magnitude, it is the trial court's sole prerogative to make specific findings of the ultimate facts as well as conclusions of law upon which the trial court's order is based." M.A.S., ¶14. Later in the opinion, the court stated: "an order that merely recites statutory language and concludes that Father 'has not substantially complied within the statutorily contemplated time frame . . . which this court finds to be willful,' does no more to facilitate a meaningful judicial review than merely stating 'petition granted.'" Id., 21.

¶17 On the other hand, in L.B.L., The Supreme Court affirmed the trial court's order even though it did not expressly state adoption without consent was in the child's best interests. The majority held the best interests determination was "implicit" and "inherent" in the court's other findings. Id., ¶12.

¶18 In the case before us, the appealed order finds: (1) the demurrer is overruled; (2) Petitioner met his burden by showing clear and convincing evidence that Father failed to pay support according to his financial ability for the relevant time period under §7505-4.2(B)(2); and (3) Petitioner met his burden of showing clear and convincing evidence that Father abandoned the child under §7505-4.2(G). The order concludes: "Petitioner's Application to Adjudicate Minor Child Eligible for Adoption without Consent of Father is hereby GRANTED."

¶19 The appealed order is silent as to S.L.M.W.'s best interests. Unlike the Supreme Court in L.B.L., ¶12, we are unable to conclude that a best interest finding is implicit or inherent in the court's other findings. Nor can we review the record and make a first instance determination of this issue. See, In re Adoption of Baby Boy K.B., 2011 OK 94264 P.3d 1258

VI.

The Trial Court's Bifurcated Procedure
May Have Foreclosed Evidence Relevant to Best Interests

¶20 During the AWOC hearing, the trial court sustained objections on the basis that the answer would only be relevant to best interests. Father was prevented from asking questions about child visitation, Mother's income, Petitioner's address, and events that were outside "the relevant time period." In M.A.S., ¶30, the Supreme Court observed: "Unlike the statutory grounds for granting adoption without consent, there is no time constraint, or relevant period, for best interest of the child analysis."

¶21 We make no determination as to whether a new trial is required. It is impossible for us to determine on this record whether the trial court's bifurcated trial procedure (Stage One: AWOC; Stage Two: Best Interests) impermissibly restricted evidence of best interests in the AWOC hearing. In Re Adoption of KPMA, 2014 OK 85341 P.3d 38

VII.

Conclusion

¶22 In determining whether a child is eligible for adoption without the parent's consent, the trial court must consider the best interests of the child. Because the appealed order makes no finding, express or implied, about S.L.M.W.'s best interests, we hold the order is not supported by clear and convincing evidence. The Journal Entry filed May 1, 2025 is reversed.

SWINTON, J., and PRINCE, J., concur.

FOOTNOTES

10 O.S. §7700-610

B. A respondent may not join a proceeding described in subsection A of this section with a proceeding to adjudicate parentage brought under Section 601-101 et seq. of Title 43 of the Oklahoma Statutes."

10 O.S. §7505-4.2

10 O.S. §7505-4.2

In re Adoption of G.D.J., 2011 OK 77261 P.3d 1159Id. at ¶38.

12 O.S. §611

M.A.S., ¶21.